# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01078-COA

| | |
|---|---|
| MARIO FEOLA, ET AL., DERIVATIVELY ON BEHALF OF DIAMONDHEAD COUNTRY CLUB & PROPERTY OWNERS ASSOCIATION, INC. | APPELLANTS |

v.

| | |
|---|---|
| BOB MARTHOUSE, CRAIG HARVEY, KAREN RICE, BILL HATCHETT, PAT LAIRD, TERESA ERTEL, GARY BECKER, DONALD SILICIO, STEWART NUTTING, NICHOLE BOISDORE AND SHARON McCULLEY | APPELLEES |

DATE OF JUDGMENT: 09/02/2021
TRIAL JUDGE: HON. JENNIFER T. SCHLOEGEL
COURT FROM WHICH APPEALED: HANCOCK COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS: PAUL M. NEWTON JR.
ATTORNEY FOR APPELLEES: ALBEN NORRIS HOPKINS JR.
NATURE OF THE CASE: CIVIL - OTHER
DISPOSITION: AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 03/28/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. This is a putative derivative action filed against the members of the board of directors of the Diamondhead Country Club & Property Owners Association Inc. ("POA"), a nonprofit corporation established to manage and maintain the common areas and amenities of the Diamondhead community in Hancock County. The chancery court dismissed the case without prejudice after concluding that the plaintiffs—who are members of the POA—failed to comply with the statutory demand and verification requirements for derivative actions filed

on behalf of nonprofit corporations. The chancery court also ordered the plaintiffs to pay the defendants $16,349.45 for attorney's fees and expenses. The plaintiffs appealed.

¶2.    We conclude that the plaintiffs satisfied the statutory demand requirement, but we agree with the chancery court that the amended complaint was not properly verified under the applicable statute. Therefore, the chancery court did not err by dismissing the case without prejudice. However, the amended complaint is not frivolous, and the plaintiffs' legal arguments are reasonable. Moreover, there is no evidence that the plaintiffs filed suit in bad faith or for the purpose of harassment. Accordingly, the chancery court abused its discretion by ordering the plaintiffs to pay the defendants' attorney's fees and expenses. For these reasons, we affirm the dismissal of the action without prejudice, but we reverse and render the chancery court's award of attorney's fees and expenses.

**FACTS AND PROCEDURAL HISTORY**

¶3.    In 1985, the developer of the Diamondhead community in Hancock County executed two special warranty deeds conveying certain properties to the POA. The properties conveyed included the community's "Golf Course," "Country Club," "Yacht Club," "Airport," and other common areas. The deeds stated in part that the property "conveyed shall be held, conveyed, hypothecated, encumbered, leased, rented, used and occupied only as common areas and common facilities for the *exclusive use* by the owners of real property" in the Diamondhead development. (Emphasis added).

¶4.    In August 2019, Mario Feola, a member of the POA and a former president of the POA's board of directors, sent a demand letter to the board alleging that the board had

2

"improperly opened use of the [development's] common facilities . . . to use by the general public." Feola stated that if the board did not take action within thirty days to prohibit use of the common facilities by the general public, Feola would pursue all available legal remedies against the "non-compliant" board members.

¶5.     In November 2019, Feola filed suit against the POA's board members in the Hancock County Chancery Court. The complaint stated that Feola was proceeding "in both his individual capacity and derivatively on behalf of [the POA]." The complaint asserted (1) a derivative claim on behalf of the POA alleging that the board members had breached their fiduciary duties to the POA and its members by opening the development's common facilities to use by the general public, and (2) a claim for breach of contract on the theory that Feola was a third-party beneficiary to the exclusive-use provisions of the 1985 special warranty deeds. After the complaint was filed, more than fifty additional plaintiffs filed joinders.

¶6.     In September 2020, the chancery court dismissed the case without prejudice. The court's one-page order is part of the record on appeal in this case but does not state why the first case was dismissed.[1]

¶7.     On July 2, 2020, sixty-four plaintiffs (including Feola) filed a new action against the POA's board members in the Hancock County Chancery Court.[2] The complaint stated that

---

[1] The plaintiffs state that the first case was dismissed because their complaint mistakenly cited the demand requirement for derivative suits against for-profit corporations. Although the defendants do not dispute this assertion, nothing in the record confirms it.

[2] This action was filed on July 2, 2020—prior to the dismissal of the first action on September 18, 2020. This action was filed on the same day a hearing was held on the defendants' motion to dismiss the first action—presumably because the chancellor announced from the bench that the first action would be dismissed.

3

the plaintiffs were all members of the POA and that they filed suit "in both their individual capacities and derivatively on behalf of the [POA]." The complaint included the same two counts as the 2019 complaint that had been dismissed without prejudice.

¶8. Eleven days later, the plaintiffs filed an amended complaint. The amended complaint continued to state that the plaintiffs were proceeding "in both their individual capacities and derivatively on behalf of the [POA]." However, the amended complaint asserted only a derivative claim on behalf of the POA and omitted any claim for breach of contract. During a subsequent hearing, plaintiffs' counsel explained that the amended complaint's reference to the plaintiffs' "individual capacities" was a mistake and that the amended complaint asserted only a derivative claim on behalf of the POA. The amended complaint attached Feola's August 2019 demand letter to show that "demand" had been made on the board. *See* Miss. Code Ann. § 79-11-193(3) (Rev. 2013). Feola verified under oath that the amended complaint's allegations were true and correct to the best of his knowledge. *See id.* The amended complaint also added nine more plaintiffs.

¶9. The defendant board members filed a motion to dismiss and for sanctions. In their motion and at the subsequent hearing on the motion, they argued that the case should be dismissed because the plaintiffs failed to comply with Mississippi Code Annotated section 79-11-193 regarding derivative actions filed on behalf of nonprofit corporations. That statute provides in relevant part:

> (1)    A proceeding may be brought in the right of a domestic or foreign [nonprofit] corporation to procure a judgment in its favor by:
>
>> (a)    Any member or members having five percent (5%) or more of

4

the voting power or by fifty (50) members, whichever is less; or

(b)     Any director.

(2)     In any such proceeding, each complainant shall be a member or director at the time of bringing the proceeding.

(3)     A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the complainants could not obtain the action or why they did not make the demand.  If a demand for action was made and the corporation's investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed.

*Id.*  The defendants argued that the plaintiffs failed to comply with the statute in two respects.  First, they argued that Feola's August 2019 demand was insufficient because the plaintiffs were required to serve the board with a *new* "demand" prior to filing this suit.  Second, they argued that Feola's verification was insufficient because the statute required the complaint to be verified by a person or persons sufficient to satisfy subsection (1).

¶10.    The chancery court granted the defendants' motion and dismissed the action "without prejudice."  The court ruled that dismissal was required because the plaintiffs "failed to make a written demand upon the [d]efendants prior to filing this lawsuit" and because the amended complaint was not "properly verified."  The court also noted that the plaintiffs could not proceed "in their individual capacities . . . to redress injuries to the [POA]."  Finally, citing section 79-11-193(4) and the Litigation Accountability Act, Miss. Code Ann. § 11-55-5 (Rev. 2019), the court ordered the plaintiffs to pay the defendants' legal fees and expenses in the amount of $16,349.45.  The plaintiffs filed a notice of appeal.

**ANALYSIS**

5

¶11. The primary issue in this appeal is whether the chancery court properly dismissed the amended complaint without prejudice because it did not comply with the statutory demand and verification requirements. That issue requires us to determine (1) whether the statute required the plaintiffs to serve a *new* demand on the board before filing this action and (2) *who* must verify a derivative complaint under the statute. These are issues of law that we review de novo. *Greenville Pub. Sch. Dist. v. Thomas*, 352 So. 3d 190, 192 (¶6) (Miss. 2022) ("This Court employs a de novo standard of review for questions of law . . . and issues of statutory interpretation."). We also address the defendants' argument that the plaintiffs improperly "filed this lawsuit in their individual capacities" rather than "on behalf of the [POA]." Finally, we address the chancery court's award of attorney's fees.

## I.   Demand

¶12. As noted above, the chancery court dismissed the amended complaint without prejudice because the plaintiffs "failed to make a written demand upon the [d]efendants prior to filing this lawsuit . . . as required by [section] 79-11-193." The statute provides that a derivative complaint "must . . . allege with particularity the demand made, if any, to obtain action by the directors and either why the complainants could not obtain the action or why they did not make the demand." Miss. Code Ann. § 79-11-193(3). The statute also provides that if "the corporation's investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed." *Id.* Our Supreme Court has held that the statute requires service of a formal written demand on the corporation's board of directors. *Longanecker v. Diamondhead Country Club*, 760 So. 2d

6

764, 769-70 (¶¶12-13) (Miss. 2000). In addition, the Court held that the demand must be sufficient to provide "some meaningful opportunity for the directors to act after learning of a threat of suit on the issue." *Id.* at 770 (¶13). The demand also must give the directors sufficient time to act on the demand before legal proceedings are filed. *Id.*

¶13.     In the present case, Feola served the board with a clear and specific demand in August 2019 in which he warned that he would pursue "all available legal remedies" if the board failed to act. In November 2019, Feola filed a lawsuit, which was later dismissed without prejudice, and in July 2020, Feola and dozens of other members of the POA filed the instant derivative action. Both the complaint and amended complaint in the instant case alleged that Feola's August 2019 demand letter satisfied the statutory demand requirement. Nonetheless, the defendants argue that the plaintiffs were required to file a new demand letter prior to commencing the present action.

¶14.     Our Supreme Court addressed an analogous issue in *Greenwood Leflore Hospital v. Watson*, 324 So. 3d 766 (Miss. 2021), a suit under the Mississippi Tort Claims Act (MTCA). In that case, the plaintiff (Watson) served the defendant hospital with a statutory notice of claim prior to filing suit, but her initial suit was dismissed without prejudice because she failed to comply with the MTCA's ninety-day waiting period. *Id.* at 767-68 (¶¶1-2). After Watson re-filed her complaint, the hospital filed a motion to dismiss on the ground that Watson had not filed a new notice of claim before filing the new lawsuit. *Id.* at 768 (¶3). On interlocutory appeal, our Supreme Court rejected the hospital's argument, holding that nothing in the MTCA required the plaintiff to file a second notice of claim following the

7

dismissal of her first complaint. *Id.* at 768-70 (¶¶5-12). The Supreme Court reasoned, "Nowhere does the MTCA (strictly construed or not) require Watson to send a second notice of claim; the statute requires a notice of a claim, not a notice of a complaint. Whether an intervening first complaint was filed is of no consequence." *Id.* at 770 (¶12).

¶15. We reach the same conclusion in this case. A notice of claim under the MTCA serves the same basic function as a demand letter. The purpose of notice of claim is to provide the governmental entity with timely notice of a claim against it so that it may "take corrective action as soon as possible when necessary" and settle the claim prior to litigation when appropriate. *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237, 1240 (¶9) (Miss. 1998). Similarly, a demand letter gives a corporation's board an opportunity "to take action to prevent divisive legal proceedings" if it determines that such action is in the corporation's best interest. *Longanecker*, 760 So. 2d at 770 (¶13). The plaintiff must give the board a "meaningful opportunity to act," but the statute "does not require any procedural formalities which must be followed when making a demand other than alleging with particularity the demand made or why the demand could not be made." *Whalen v. Pleasant Hill Water Ass'n Inc.*, 891 So. 2d 250, 254 (¶24) (Miss. Ct. App. 2004). Consistent with the Supreme Court's reasoning in *Watson*, we conclude that the statute did not require the plaintiffs in this case to serve the POA's board members with a second demand letter. *Watson*, 324 So. 3d at 770 (¶12). The statute only required the plaintiffs to give the board a reasonable opportunity to act, which they did.

## II. Verification

8

¶16.    Feola verified the amended complaint in this case by signing a sworn, notarized statement that, to the best of his knowledge, the complaint's allegations were true and correct. The only issue related to verification is whether the amended complaint needed to be verified by additional plaintiffs—either a director of the POA or the minimum number of members of the POA required to bring an action on behalf of the POA. Section 79-11-193(3) simply states that a complaint filed on behalf of a nonprofit corporation "must be verified." It does not specify *who* must verify the complaint. But section 79-11-193(1) states that a derivative action must be filed by "(a) [a]ny member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less; or (b) [a]ny director." On its face, the amended complaint appears to satisfy this requirement because it was filed by more than fifty plaintiffs and alleges that all plaintiffs are members of the POA.[3] However, only Feola "verified" the complaint. The defendants argue that Feola's verification was insufficient because a complaint "must be verified" by a director or by the minimum number of members required to maintain the action under subsection (1).

¶17.    Neither the Mississippi Supreme Court nor this Court has decided this issue of statutory interpretation. The defendants suggest that this Court addressed the issue in *Whalen*. In that case, sixty-one members of a nonprofit water association attempted to assert derivative claims on behalf of the association. *Whalen*, 891 So. 2d at 251 (¶1). This Court's opinion included the following summary of the chancery court's ruling dismissing the plaintiffs' derivative claims:

---

[3] In addition, in the chancery court, plaintiffs' counsel represented that one of the plaintiffs was a director of the POA.

> The chancellor held that while the complaint had sixty-one plaintiffs, the plaintiffs joined the complaint by signing their names to the complaint but did not have their signatures notarized as required by Mississippi Code Annotated [section] 79-11-193(3) (Rev. 2001). The chancellor also noted that there was no written demand given to [the board].

*Id.* at 254 (¶23). This Court then affirmed the chancery court's ruling on the ground that one plaintiff's attempt to make an "oral demand" on "some of the board members" did not satisfy section 79-11-193(3)'s demand requirement. *Id.* at (¶¶24-25). This Court did *not* address the chancery court's conclusion that the statute required additional plaintiffs to verify the complaint under oath. *Id.* Accordingly, *Whalen* did not resolve that issue of statutory interpretation but merely summarized the chancery court's ruling. Thus, the issue of statutory interpretation in this appeal is one of first impression.[4]

¶18. Addressing this issue of first impression, we conclude that a derivative complaint against a nonprofit corporation must be verified by a director of the corporation or the minimum number of members required by section 79-11-193(1). The statute reflects a judgment by the Legislature that a derivative suit against a nonprofit corporation should not be maintained unless a director or a minimum number of its members are willing to join the suit as plaintiffs. In addition, the Legislature provided in section 79-11-193(3) that such a

---

[4] Courts applying the verification requirement of Federal Rule of Civil Procedure 23.1 have held that it is sufficient for one plaintiff to verify the complaint in a derivative action and that "other plaintiffs need not do so." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1827, at 56-57 (3d ed. 2007). Similar to the statute at issue in this case, Rule 23.1 provides that a derivative complaint "must be verified." Fed. R. Civ. P. 23.1(b). However, cases interpreting Rule 23.1 are of limited relevance to the interpretive issue in this case because Rule 23.1 provides that "one . . . member[] of a corporation" may file a derivative action. Fed. R. Civ. P. 23.1(a). The Mississippi Rules of Civil Procedure omit Rule 23.1 altogether.

complaint "must be verified." The general purpose of such a verification requirement is to attempt to ensure that the plaintiff or plaintiffs filed the derivative action for a proper purpose, in good faith, and after adequate investigation. *See, e.g., Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966); *Alford v. Shaw*, 398 S.E.2d 445, 448 (N.C. 1990); *Halsted Video Inc. v. Guttillo*, 115 F.R.D. 177, 180 (N.D. Ill. 1987). Reading these two statutory requirements together,[5] it only stands to reason that the Legislature intended to require that the complaint "must be verified" *either* by "[a]ny director" *or* by the minimum number of members that the Legislature deemed necessary to maintain the action. Feola's verification was insufficient because he was not a current director of the corporation. Accordingly, the chancery court did not err by dismissing the amended complaint without prejudice on the ground that it had not been verified by persons sufficient to maintain the suit.[6]

### III.   Proper Parties

¶19.   The defendants also argue that the plaintiffs improperly "filed the lawsuit in the individual stockholder's [sic] names." This argument is without merit. The plaintiffs properly filed suit "derivatively on behalf of the [POA]" and clearly asserted a claim on behalf of the POA. The amended complaint is consistent with section 79-11-193, which

---

[5] *See, e.g., Allgood v. Bradford*, 473 So. 2d 402, 411 (Miss. 1985) ("In construing statutes, all statutes in pari materia are taken into consideration and the legislative intent is deduced from the consideration as a whole.").

[6] Other courts have held that the "failure to properly verify the complaint . . . is merely a procedural defect which ordinarily would be curable by amendment to the pleadings." *Alford*, 398 S.E.2d at 448 (citing *Halstead Video Inc.*, 115 F.R.D. at 180). However, in the present case, the plaintiffs did not seek leave to amend to provide additional verifications for the amended complaint. Therefore, the chancery court did not err by dismissing the case without prejudice.

authorizes members and directors of a nonprofit corporation to assert claims on behalf of the corporation. Likewise, our Supreme Court has recognized that individual shareholders or members may assert the corporation's rights "in a representative capacity"—i.e., derivatively—on behalf of the corporation. *Bruno v. Se. Servs. Inc.*, 385 So. 2d 620, 622 (Miss. 1980). Although the body of the amended complaint stated that the plaintiffs were *also* proceeding "individually," the plaintiffs acknowledged that this statement was an error and that they have no individual claims. Aside from that error, the plaintiffs properly pled derivative claims on behalf of the POA.

¶20. We do note that although the plaintiffs properly filed suit on behalf of the POA, they also should have joined the POA itself as a party. In general, the corporation is a necessary party in a derivative action because the suit is brought on the corporation's behalf. *Fairchild v. Keyes*, 448 So. 2d 292, 294 (Miss. 1984); *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). In addition, if the action is successful, the court may order "the corporation [to] tak[e] some action requested by the complainants." Miss. Code Ann. § 79-11-193(5). Therefore, the normal procedure is for the derivative plaintiffs to name the corporation as a defendant. *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983). "Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests." *Id.*

¶21. Nonetheless, the failure to join the POA would not, by itself, have required the case to be dismissed. Because the POA "is subject to the jurisdiction of the court," the proper procedure would have been for the chancery court to order the POA to be joined as a party—not to dismiss the case. M.R.C.P. 19(a); *see* 1 Jeffrey Jackson et al., *Mississippi Civil*

*Procedure* § 8:11, at 554 (2020 ed.). We simply note the issue so that the plaintiffs may join the POA as a party if they re-file their complaint.

### IV. Attorney's Fees

¶22. As noted above, in addition to dismissing the case without prejudice, the chancery court ordered the plaintiffs to pay the defendants' attorney's fees and expenses in the amount of $16,349.45. The chancery court cited section 79-11-193(4) and the Litigation Accountability Act, Miss. Code Ann. § 11-55-5, in support of its award. We conclude that the chancery court abused its discretion because the plaintiffs made reasonable legal arguments in support of their positions, and there is nothing to show that they filed or maintained this action in bad faith or for the purpose of harassment.

¶23. Under section 79-11-193(4), when a court dismisses a derivative action against a nonprofit corporation, the court "may require the complainants to pay any defendant's reasonable expenses (including counsel fees) incurred in defending the suit if it finds that the proceeding was commenced frivolously or in bad faith." Similarly, under the Litigation Accountability Act,

> the court shall award . . . reasonable attorney's fees and costs against any party or attorney if the court . . . finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment . . . .

Miss. Code Ann. § 11-55-5(1). The phrase "without substantial justification" means "frivolous, groundless in fact or in law, or vexatious." Miss. Code Ann. § 11-55-3(a). In related contexts, our Supreme Court has held that pleadings and arguments that are at least

13

"colorable are not for the purpose of harassment or delay; thus, sanctions are inappropriate." *Est. of McLemore v. McLemore*, 63 So. 3d 468, 490 (¶68) (Miss. 2011) (applying Mississippi Rule of Civil Procedure 11); *accord Gamma Healthcare Inc. v. Est. of Grantham*, 334 So. 3d 85, 93-95 (¶¶22-25) (Miss. 2022) (reversing sanctions imposed by the Workers' Compensation Commission).

¶24. In the present case, the chancery court's written ruling did not provide any findings or conclusions to support the award of attorney's fees and expenses. In its bench ruling, the court simply stated that it would award attorney's fees because the plaintiffs did not make "a new demand . . . that would have to do with this suit" and because the amended complaint was "not verified by" a director or enough members.

¶25. As discussed above, we hold that the plaintiffs were not required to make a new demand before filing this action. Therefore, the failure to make a second demand obviously cannot support an award of attorney's fees.

¶26. In addition, the plaintiffs' failure to properly verify the amended complaint cannot support the award of attorney's fees. For the reasons explained above, we agree with the chancery court that the amended complaint was not properly verified under the applicable statute. However, the proper interpretation of the statute raised an issue of first impression, and the plaintiffs' position on the issue—that one plaintiff's verification was sufficient—was reasonable. *Gamma Healthcare Inc.*, 334 So. 3d at 94 (¶¶23-24) (holding that a party should not have been sanctioned for advancing a reasonable legal argument that was not foreclosed by any binding precedent). As our Supreme Court and this Court have recently stated,

14

"parties should not be sanctioned for making reasonable legal arguments in support of their positions." *Id.* at (¶24) (brackets omitted) (quoting *Gamma Healthcare Inc. v. Est. of Grantham*, No. 2019-WC-00913-COA, 2020 WL 7040956, at *7 (¶29) (Miss. Ct. App. Dec. 1, 2020)). Here, although we do not adopt the plaintiffs' proposed interpretation of section 79-11-193, the plaintiffs' legal argument was reasonable and was not foreclosed by any prior precedent. Accordingly, the chancery court abused its discretion by sanctioning the plaintiffs for advancing that argument. *Id.*[7]

## CONCLUSION

¶27. The judgment of the chancery court is affirmed in part to the extent that it dismisses the case without prejudice. The judgment is reversed and rendered in part to the extent that it orders the plaintiffs to pay the defendants' attorney's fees and expenses.

¶28. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD,**

---

[7] The defendants also briefly argue that the amended complaint is frivolous because they acted in "good faith" when they permitted public use of the POA's common facilities. The defendants cite Mississippi Code Annotated section 79-11-275(3) (Rev. 2013), which provides in part that an officer of a nonprofit corporation "is not liable for any action taken as an officer" relying "in good faith" on the opinions of the corporation's legal counsel. The defendants then rely on a 2009 opinion letter from outside counsel that appears to have advised the board that it could allow patrons of a certain casino to use POA amenities under the circumstances described in the letter. The 2009 opinion letter was provided to Feola, who was the president of the POA board at that time. However, the letter did not discuss the exclusive-use provisions of the special warranty deeds that are the basis of this lawsuit. Moreover, even if the board members cannot be held personally "liable" because they discharged their duties "in good faith," that would not preclude a court from granting prospective injunctive or declaratory relief on behalf of the corporation. Accordingly, while the 2009 opinion letter may be relevant to the issues raised by the amended complaint, the letter does not justify the chancery court's award of attorney's fees. Indeed, the chancery court's ruling did not rely on or even mention the 2009 opinion letter.

**LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**